The next case today is Medicaid & Medicare Advantage Products Association of Puerto Rico Incorporated et al. v. Domingo Emanuelli-Hernandez, Appeal No. 21-1297, and Medicaid & Medicare Advantage Products Association of Puerto Rico Incorporated et al. v. Asociacion de Hospitals de Puerto Rico et al., Appeal No. 21-1379. Attorney Abreu, please introduce yourself for the record and proceed with your argument. Good morning again, your honors. If it may please the court, my name is Mario Labreau, and I represent Government Appellants, the Attorney General, and the Insurance Commissioner of the Commonwealth of Puerto Rico, and I'll Please proceed, counsel. Your honors, the issue before this court is whether Medicare Part C's express preemption clause expressly preempts subsection 7, paragraphs 7 and 8 of Puerto Rico's Act 90. The district court in this case held that it did, and that judgment must be reversed for the following reasons. First and foremost, the plain language of the preemption clause at issue clearly preempts state regulations only if a federal Medicare Part C standard specifically addressed the subject matter of the state regulation. To be clear, although in 2003 Congress amended the preemption clause at issue to broaden the scope of preemption, it did not do so in the way Appeal No. 21-1379 suggests. The prior version of the clause used conflict preemption. The current version, in contrast, does not require conflict in order for preemption to exist, but still requires the existence of an overlapping federal standard. This court has not yet announced an analytical framework. So, why isn't your position just conflict preemption in another guise? It seems to me that, let me just read you the language that was abandoned in 2003. Then preemption provision provided that only state laws relating specifically to enumerated areas of Medicare choice were superseded by federal law. That seems to me to be exactly what you're arguing here. There has to be a convergence and overlap, whatever, between an identifiable federal standard and a state law. Unless there, and in the absence of that overlap or convergence, then there's no preemption. That seems to me to be exactly what Congress chose to abandon in 2003. So, why is there any difference between what you're arguing for here and what Congress chose to abandon in 2003? Well, Your Honor, by abandoning conflict preemption and by abandoning the preemption provision like it reads now, it reads that standards established under this part shall supersede state laws. That reading requires that a federal standard actually exists, meaning if the federal standard does exist, it would preempt state laws. It doesn't have to be a conflict. If the federal standard actually exists, all state laws with respect to that standard obviously would be preempted. Well, aren't there federal standards here that do preempt 7 and 8? The government's position is that there's none. Well, counsel, I guess on that point, there is clear, I would say, legislative history that in adopting this Medicare Advantage program, Congress wanted to avoid any kind of mandated pricing for services because they wanted, as a matter of policy, to have a kind of free enterprise system, which might produce cheaper services, greater efficiencies, and so forth. So, it was made very clear, more than as a matter of policy, I think perhaps as a matter of clear statutory directive that there couldn't be that kind of price prescription, if you will. Wouldn't it be completely at odds with that statutory and policy choice to say that Puerto Rico can mandate pricing in the provision of services under the Advantage program? How can you reconcile that choice with what seems to be the clear federal policy and law to the contrary? Well, Your Honor, the government's position is that what we call the mandate price provision does not require a particular price structure or a compensation agreement in contracts between MAOs and their providers, such as payment on a fee-for-service basis rather than per member basis. It merely establishes a minimum or a floor for payments of services to MAO providers. That doesn't impede MAOs from negotiating with their providers anything above the floor or actually negotiating something that is not the fee-for-service basis. Well, on the issue of the termination provision, the federal law talks about 30 days and it doesn't set up for cause, whereas the Puerto Rico statute says only termination with just cause. Why isn't that a direct conflict? Well, Your Honor, the government's position as to that is that the provision in the Code of Merit merely means that if and when parties agree to termination without cause, they need to give a 60-day notice. Nonetheless, the government does recognize that there is on-point regulation regarding termination without cause that could potentially preempt the termination provision. So, you're only defending half of that of eight? Yes, Your Honor. So, I'm not sure I understood that position. Counselor, could you please clarify that? You seem to have made a concession of sorts, but I'd like to understand exactly what that concession is. Would you please explain that again? Yes, Your Honor. What I meant was that the government's position is that the disposition in the Federal Code of Regulations is not a standard of conduct. But if this Court does understand that to be a standard of conduct, the government does recognize that there's a regulation on point that does conflict with Part VIII of Act 90 of Puerto Rico. And in that sense, if the Court understands that provides a standard of conduct, we concede there will be preemption. Okay, thank you. So, Counselor, just to be clear, at least from my perspective, I'm aware of the reasons this were enacted, and it's clear that Puerto Rico is trying to stop the flight of doctors from the hospital. I mean, the question is whether there needs to be a political solution to this. In other words, part of it is the fees that are deemed part of the basis for computing payments in Puerto Rico, and the assertion that they don't provide for high enough compensation for physicians on the island. By political, I mean it might be a matter of trying to get Congress to give you a political solution rather than making an argument as to what the federal law seems to suggest in its current statement that it shall supersede any state law or regulation, other than the two specific ones that they continue to allow to be regulated locally. Well, Your Honor, the way we read the preemption provision, we don't read it to understand that it preempts any state law with the exceptions that you mentioned. The preemption provision expressly requires a medical per se standard to actually be able to supersede state law. In the event that there's none, then they wouldn't preempt the Puerto Rico law in this case. Counselor, even if there's an argument that there may be some ambiguity in the language so that your reliance on the reference to standards has some basis in the text, aren't we told we're supposed to look beyond text to the background policy, the totality of the statutory structure, the history by which I refer to the nature of the previous preemption provision and what we have now? Aren't we supposed to look at all of that in deciding what the scope of this preemption clause is? Your Honor, I agree the court should look at that when there's ambiguity, but our position is that the preemption clause is clear. It's clear that it requires a federal standard in order to supersede a state law on that subject, and most courts that have interpreted the preemption provision in Medicare have required an overlapping federal standard to find preemption. So, are you sure that's a fair statement of the law? That strikes me as a little bit of an overstatement, frankly. I mean, we can check the precedence for sure, but it strikes me from what I've read that's a bit of an overstatement. What I meant, and I can cite to the pages on our briefs where those cases are cited, is that most courts that have in some way interpreted the Medicare preemption provision do require an overlapping federal standard. There needs to be a federal standard on point to preempt the state law at issue. And to that point, Your Honor, if you allow me to add, we think that this court should follow the standard-based analysis recently adopted by the 8th Circuit in the PCM v. Webby case. In that case, the 8th Circuit, and I quote, stated that although the preemption clause preempts a broad array of state of laws, it nonetheless contains two limitations. Preemption remains with respect to MA plans, and two, preemption, of course, only when a federal standard supersedes state law. The court went on to define supersede to mean displace. And accordingly, the 8th Circuit observed that the preemption provision does not preempt all state laws as applicable in that case to Medicare Part D, which incorporates Medicare Part C's preemption clause. Rather, it preempts only those that occupy the same place, that is, regulate the same subject matter as the federal Medicare Part C standard. And that is actually consistent with what we argued in page 20 of our that the term supersede precludes a reading that the statute categorically preempts any state law. Rather, it suggests a replacement or a substitution instead of a blanket preemption. Counsel, let me just push you a little bit on the logic of your position on this mandated pricing thing. You seem to take the position that because there is no standard that addresses any form of mandated pricing, that in the absence of a standard, Puerto Rico can mandate pricing in the way that it does. And yet, as I suggested earlier, there seems to have been an explicit choice, certainly reflected in policy statements, perhaps in the statute itself, that there shall not be any mandated pricing. And so you seem to take the position that because that judgment has been made federally and results in the absence of any standard, I mean, that was a policy choice, there shall be no mandated pricing, that that gives Puerto Rico the license to go ahead and prescribe pricing. That seems to be an odd and difficult logic to defend. Your Honor, I will reiterate my argument that I said before. Our position is that the mandate price provision of Act 90 does not dictate a particular compensation arrangement or payment structure because, among other things, health plans are free to contract with providers at any rate or equivalent value above the minimum set against the CMS fee schedule. And they actually have historically done so for many specialties and areas of practice. Thank you, Counsel. If you would mute your audio and your camera. Yes. Mr. Kimberley. Thank you, Your Honors, and may it please the Court. I think, to pick up on some of the questions that were raised earlier, I think to understand the problem with the Commonwealth's position in this case, it's really important to understand the difference between Medicare Advantage or Medicare Part C on the one hand and traditional Medicare. Like traditional Medicare, Medicare Advantage is a purely federal health benefit program and it's subsidized with federal funds, but it differs from traditional Medicare in that it's semi-privatized and it depends on competition among the government's private partners in the program, so-called Medicare Advantage organizations. What that means is through this program, Congress has decided that with respect to Medicare Advantage programs, it would get out of the business of setting reimbursement rates for providers and dictating terms for network participation. And instead, it would assign responsibility for those tasks to MAOs, which would then set their own rates and establish their own network terms subject to federal guardrails established in both statute and by regulation. The idea is that MAOs then would have the leeway they need to innovate and compete with one another to offer the best possible benefits with the best possible networks and the lowest possible prices. The so-called non-interference standard, which is at the heart of I think what some of the discussion has been over the last 15 minutes, is essential for this scheme to work. According to that rule, federal regulators are forbidden from imposing, and I quote, particular price structures for payment under contracts between MAOs and network providers. In the same provision, Congress also specified that federal regulators may not require an MAO, quote, to contract with a particular hospital physician or other provider. And it is through those two provisions that Congress ensured that MAOs would have the leeway that I started out by describing, the leeway that they need to produce attractive and cost-effective plans that are not overburdened by prescriptive regulations that inhibit competition in the marketplace. Now, that scheme would be turned entirely upside down if the court were to credit the Commonwealth's arguments in this case because in effect, their view is that Congress has considered judgment to preclude CMS from regulating price structures and network design, was not an allocation of responsibility to MAOs to give them the leeway they need to innovate and competitive plans, but instead an invitation to states and territories to regulate Medicare Advantage plans on their own in variable and locally protectionist ways. And our position is that that argument really cannot be squared either with the statutory scheme that I've just described or the plain text of the express preemption clause, which as Judge Lipez was noting, has to be viewed through the lens of that broader statutory scheme. Counsel, can I just ask you about the actual text of the preemption provision that we're talking about? Because it seems to me there is some force to the Commonwealth's argument that that reference to standards in the preemption provision has more meaning than you wish to acknowledge. I mean, just look at the language. It says, the standards established under this part shall supersede any state law or regulation. It seems to me that to give it the sweeping effect that you want to give it basically reads the reference to standards out of the preemption provision. To give it sweeping effect, the provision probably should have simply said, this part, no reference to standards, this part shall supersede any state law or regulation other than licensing laws or state laws relating to plan solvency with respect to MA plans, which are offered by MA organizations under this part. It seems to me you're really treating that reference to standards as some kind of surplusage of no consequence. And we're told that we're not supposed to read statutes that way. We're supposed to accord significance to all the language. And it seems to me your reading accords no significance to the reference to standards. And so how do you respond to that? There are two responses. And one is to address the straightforward textual question. And another is just a practical observation about this case. First, as to the text, our position is not that the part itself, so your Honor suggested Congress could have just said this part shall supersede. But that would be a reference only to the statute and the statutory provisions, the statutory rules and specifications and qualifications. But we know from paragraph one what Congress had in mind with the word standard. This is in the same statutory provision, just two paragraphs earlier. And it says that the secretary shall establish by regulation standards for Medicare Advantage organizations and plans consistent with and to carry out this part. So I think the way to understand the work that the word standard is doing here is to say it's not just the statutory provisions that have preemptive force, which would be the case if it said only this part shall supersede, but also the regulations promulgated by CMS and the secretary under this part to implement the Medicare Advantage program. And so I think the way to think of the word standard is just that it is a federally determined rule or specification or qualification for MA plans under the MA program generally. You know, I would note also that the work that this is doing too is to clarify that it isn't that MA plans are completely excused from compliance with state regulations and rules. We know this from the Federal Register preamble to the 2005 rulemaking, which the parties and the district court below all discuss at length. And what that preamble explains, and I think it's common sense, is that the limit of preemption here is the limit to the area of law within which CMS has been tasked by Congress with setting standards to govern MA plans. So it doesn't preempt, for example, laws of general application like civil rights laws or labor employment laws or environmental laws. That's the work that this language is doing to circumscribe preemption just to those areas of law within which CMS has been tasked by Congress under this part with establishing standards to regulate the MA program. I would add, Your Honor, that it is not we but the appellants who are looking to alter the language of the provision itself. The provision states that the standards established under this part, which as I say is a reference back to paragraph 1, shall supersede any state law or regulation with respect to MA plans. Their view is that with respect doesn't modify to MA plans but rather modifies standards, which is not a, I think, grammatically logical way of looking at this provision. This provision says nothing whatever about the need for overlapping standards at all. It establishes a broad field and as Chief Judge Howard, as you put it in the first medical opinion back in 2007, I'll quote, Congress's purpose in enacting this protects the purely federal nature of Medicare Advantage plans operating under Medicare. Respectfully, our position is that the district court got it precisely right on page 59 of its opinion. We're applying this straightforward statutory text. It held simply that the mandatory price provision and the termination provision are expressly preempted because they are regulations with respect to MA plans. Manifestly, that is so. The two provisions are limited exclusively to MA plans. The mandated price provision states, and I'll quote, no agreement between a Medicare Advantage health service organization and a service provider relating to services offered under Medicare Advantage shall include a clause forbidding the payment of services below fee for service established by CMS. On its face, that is a regulation of the contracts entered into and the prices paid in reimbursement for services under Medicare Advantage. I would be hard-pressed, Your Honours, to imagine a clearer case for preemption under such a broadly worded express preemption clause. If you wanted to give, I don't think labels are all that important, but given the way you characterize the scope of preemption here, it sounds like it's pretty to what you say in the law is really a field preemption. It's stated expressly, but that's pretty much what you're saying. Are you saying that the federal government has preempted, except for the exceptions noted, any state law or regulation of that would, with respect to MA plans, which are offered by MA organizations under this part, that seems to be the logic of your, any attempt by the state to regulate except in the noted exceptions is preempted. That does seem to be the scope of your argument, and that does sound a lot like field preemption. Would you agree? I would agree, Your Honour. I would qualify with two observations. The first is I think then the question is what's the field, and our answer on that score is I think the district court's answer below as well, and it's the area of law within which CMS has been tasked by Congress with setting standards to govern MA plans. As I say, our position is not, and I don't think the court has to hold, that this preempts all generally applicable state laws not having to do in particular with the Medicare Advantage program like environmental laws or workplace safety laws and that sort of thing, but within that field, within the field that Congress established under this part and tasked CMS with implementing by regulation, yes, I think the correct interpretation of this language is field preemption. I would add, Your Honour, even if the court thinks that there is some traction to the Commonwealth's position that you must have perfectly overlapping standards so that there is no preemption if Congress is silent on an issue, even if that silence is a considered decision not to regulate, we'd still win this case, and that's because there are standards here that have been enacted by Congress and promulgated by CMS. If I could, I'll just turn briefly to that statute specifies, and I'll say the citations here are long. I'll just offer the last few bits for reference. This is at W-24A6B3. The statute specifies that CMS, quote, may not require a particular price structure for payment under contracts between MAOs and network providers. Now, that is an express direction to CMS that it may not do what the Commonwealth here has to do. CMS then, in turn, sets detailed limits on certain kinds of incentive payments that are permissible under the program to forestall fraud and abuse. This is an indication that CMS gave good and thoughtful consideration to what it was permitted to do under this provision and issued its own standards for what kinds of payment structures are off limits, and I would point the court also to W-22A2. This is, again, a congressional standard. This is the provision of the Medicare statute in which Congress directs the way that out-of-network providers are to be treated, and it specifies that an MA plan reimbursing services by an out-of-network provider must provide payment in an amount equivalent to fee for service under traditional Medicare. That is an indication that Congress thought about requiring fee for service as a requirement, and it made the considered judgment not to impose that requirement in network providers. As I mentioned at the outset, it couldn't have been otherwise because the whole point of Medicare Advantage, as I said, is to allocate responsibility for thinking about innovative, competitive solutions to reimbursements under this program to private Medicare Advantage organizations and not to the federal government. The whole point was to turn away from traditional Medicare. Counsel, would you comment on opposing counsel's observation that the position you're advocating here has been largely rejected by other courts that have addressed this preemption issue? I thought that might have been a bit of an overstatement, but what is your view of that? I think it is an overstatement, Your Honor. There's only one other court of which I'm aware that has addressed the question of the standard applicable after the 2003 amendments to the statute. The Ninth Circuit in the Oom case deferred on the issue and didn't decide what standard applied. The Eighth Circuit earlier in late 2021 issued a decision addressing the question, and I'll quote from page 971 of that opinion. It says, in other words, the effect of the 2003 amendment was to expand the scope of express Medicare preemption from conflict preemption to field preemption. Now, the provisions that the Eighth Circuit there was confronted with were very different kinds of provisions than those that confront the court in this case, and it found that some were preempted and others were not. As I say, under any reading of the provision, either the broad reading that we think the text compels or even the narrower reading requiring overlapping standards that the Commonwealth is proposing, which I would say is not really an actual broadening of the pre-2003 standard, we would prevail in this case. So there is no basis in the Eighth Circuit's decision to say that this case should come out any other way. If anything, it suggests that really this court ought to agree with the Eighth Circuit, apply field preemption, and hold precisely as the district court did that the provisions here are preempted. I would add, Your Honors, I understand my friend on the other side effectively to have conceded that the termination provision is preempted if 42 CFR 422.202.d.1 in fact establishes a standard within the meaning of the preemption provision, and of course it does. It couldn't be otherwise because it is, again, in paragraph one of that to promulgate standards by regulation under the M.A. program to implement the program. This is one of those regulations that they promulgated to implement the program. So I think there is certainly no basis to think that the provision in the regulations would not constitute a standard here. And to pick up on Judge Thompson's question on this front, that is where CMS specifies that Medicare Advantage organizations may quote suspend or terminate close quote a provider without cause as long as they give 60 days notice. There's no way to square that provision with the termination provision which forbids termination without cause. Thank you, counsel. Are there other questions from the panel? No. All right. Thank you. If you would now mute your audio and your camera. Thank you, your honor. Ms. Abreu Acevedo. Yes. Your honors, I would like to point out four things of opposing counsel's argument to which the commonwealth doesn't agree. First of all, they rely heavily on the non-interference clause which by its terms applies only to federal regulators. It doesn't apply to state regulators. It specifically states that it applies to the secretary of the HHS and CMS. In that sense, our position is that in the absence of a federal payment standard, it will defy the logic to suggest that somehow constitutes a standard. To opposing counsel's point that the Webby case doesn't support our position, the Eighth Circuit actually considered an argument similarly to the one that opposing counsel is doing and rejected that argument on because none of the challenge provisions purport to regulate what the HHS secretary may do. The non-interference clause does not displace any of the challenge provisions under Medicare Part D's express preemption provision. In this case, the Puerto Rico law doesn't or neither purports to say what the secretary may do. In that sense, the Eighth Circuit's opinion does support our position that that clause cannot be said to expressly preempt the mandate price provision. To another point, opposing counsel mentioned that we were reading the preemption clause with respect to MA plans. To that point, that is not correct. Actually, the term MA plans is specifically defined in the statute and I quote, as health benefits coverage offered under a policy contract by an MAO that includes specific set of health benefits offered at a uniform premium and a uniform level of cost sharing to all Medicare beneficiaries residing in the service area of the MA plan. Puerto Rico law does not regulate in any way health benefits, sets any set specific health benefits, nor does it interfere with the uniform premium or cost sharing that the MAO offers to its beneficiaries. Counselor, your time is up. What were your other two points? You said you had four, I think. To sum up, as to the field preemption position of opposing counsel, I'll circle back to the text. I think the text of the preemption provision does not admit a reading that it fulfilled preemption. And what is your fourth point? Your final point? One of my points, I used it together. One was not to interfere and the other point, I argued them in the same way. Thank you very much. That concludes argument in this case. Attorney Abreu and Attorney Lubriel and Attorney Kimberly, you should disconnect from the hearing at this time.